**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

STATE FARM FIRE AND CASUALTY
COMPANY
                                            **CIVIL ACTION**

VERSUS
                                            **NO. 17-154-JWD-RLB**

DISH NETWORK SERVICE, LLC AND
SATELLITE COUNTRY, INC.

## RULING AND ORDER

This matter comes before the Court on two motions. The first is the *Motion for Summary Judgment* (Doc. 85) filed by Defendants, Satellite Country, Inc. ("Satellite Country"), Foremost Signature Insurance Company, and Charles E. Bailey, Jr. (collectively, "Defendants"). Plaintiff State Farm Fire and Casualty Company ("State Farm") opposes the motion. (Doc. 88.) Defendants have filed a reply. (Doc. 92.) The second motion is State Farm's *Motion to Strike* (Doc. 87), which is opposed (Doc. 90). The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the motion to strike is granted, and the motion for summary judgment is denied without prejudice.

**I.**      **Relevant Background**

This is a fire case. Plaintiff State Farm, as subrogee of its insured, Tamekia Paige, initially filed suit against Dish Network Service, LLC, ("Dish") and Satellite Country, seeking reimbursement for insurance funds State Farm paid to Paige for a residential fire. (*Statement of Uncontested Material Facts in Support of MSJ* ("*SUMF*") ¶ 1, Doc. 85-2; *Plaintiff's Response to Defendants' SUMF* ("*PRSUMF*") ¶ 1, Doc. 88-1.) State Farm alleged that Dish and/or Satellite Country "caused a power cord to become impinged during installation, compromising the cord's insulation and eventually resulting in the subject fire." (*SUMF* ¶ 2; *PRSUMF* ¶ 2.) State Farm's

Amended Complaint alleges that "the fire and resulting damage was caused by the negligence of Satellite Country and/or Charles Bailey for their improper installation of electrical equipment and/or wiring within the Paige residence. Specifically, Satellite Country and/or Charles Bailey caused a power cord to become impinged during installation, compromising the cord's insulation and eventually resulting in the subject fire." (*SUMF* ¶ 3; *PRSUMF* ¶ 3.) According to the Amended Complaint, "Dish Network . . . subcontracted with Satellite Country to perform the installation of the television electrical equipment/wiring within the Paige residence," and "Satellite Country subcontracted with Charles Bailey to perform the installation of the television electrical equipment/wiring within the Paige residence." (*Am. Compl.* ¶¶ 4–5, Doc. 34.)

Defendants now move for summary judgment on two main grounds. First, Defendants argue that State Farm cannot prove that Bailey caused the fire. Second, and critical here, Defendants assert that State Farm's claims are barred because Paige signed the DISH Network Service, L.L.C., Service Agreement (the "Service Agreement"), which purportedly released Dish Network, its affiliates, and its subcontractors from any liability from installing any equipment. Defendants maintain that State Farm has no greater rights than its insured, who waived her rights against subcontractors like them. Further, since the waiver did not cover physical injury, it is enforceable. For all these reasons, State Farm cannot recover from Defendants.

State Farm responds that (1) there are questions of fact as to whether Bailey negligently installed the cable equipment and thus caused the fire; and (2) a question of fact exists regarding the waiver. As to the second, State Farm contends that the contract is ambiguous, both in the provision at issue and in related provisions. State Farm also asserts in its *PRSUMF* that Defendants failed to establish that Paige signed the Service Agreement at issue.

In reply, Defendants dispute State Farm's efforts to create questions of fact on the cause of the fire. Further, Defendants urge that the Service Agreement is valid and enforceable.

State Farm also moves to strike the Service Agreement because it's not authenticated and is inadmissible. In response, Defendants contend that, at the summary judgment stage, parties now only need to submit evidence capable of being presented in an admissible form at trial. Thus, the Service Agreement is proper evidence.

## II.     Relevant Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S. Ct. 1348 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

"[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure [(that is, beyond doubt)] all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986); *peradventure*, MERRIAM-WEBSTER'S DICTIONARY (2019), available at https://www.merriam-webster.com/dictionary/peradventure. Phrased another way, "[w]here the summary judgment movant bears the burden of proof at trial, the summary judgment evidence must affirmatively establish the movant's entitlement to prevail as a matter of law." *Universal Sav. Ass'n v. McConnell*, 14 F.3d 52, 1993 WL 560271, at *2 (5th Cir. Dec. 29, 1993) (unreported).

### III. Discussion

#### A. Motion to Strike

Preliminarily, the Court will grant the motion to strike the Service Agreement as improper summary judgment evidence. Federal Rule of Civil Procedure 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form." *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017) (citing Fed. R. Civ. P. 56(c); *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017); *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016)). "After a 2010 revision to Rule 56, 'materials cited to support or dispute a fact need only be *capable* of being "presented in a form that would be admissible in evidence." ' " *Id.* (quoting *LSR Consulting, LLC*, 835 F.3d at 534 (quoting Fed. R. Civ. P. 56(c)(2))). "This flexibility allows the court to consider the evidence that would likely be admitted at trial—as summary judgment is trying to determine if the evidence admitted at trial

would allow a jury to find in favor of the nonmovant—without imposing on parties the time and expense it takes to authenticate everything in the record." *Id*. (citing Fed. R. Civ. P. 56(c)(1)(A)).

For example, in *Maurer*, the Fifth Circuit found that the district court abused its discretion in refusing to consider a contract and in thus improperly granting a motion for summary judgment. *Id.* at 384–85. The appellate court explained that it was "undisputed that the [parties] entered into an agreement. The contract Maurer submitted appears to be that agreement, and Defendants have not argued otherwise." *Id.* at 384. The absence of a signature did not make the agreement inadmissible. *Id.* Further, the opposing party failed to object, thereby depriving defendant of notice and an opportunity to remedy the problem. *Id.* As a result, "the district court's exclusion of the contract was not consistent with the new summary judgment rule, [so] its ruling was an abuse of discretion." *Id.* at 385.

The instant case is different than *Maurer*. Here, unlike *Maurer*, there is a dispute as to whether the parties entered into the agreement. Specifically, State Farm says in its *PRSUMF*: "Defendants have not established that Ms. Paige ever executed the referenced agreement." (*Id.* ¶ 20, Doc. 98.) Further, despite this objection, Defendants did nothing to remedy the problem. While Defendants have presented a contract that appears to be signed, the signature is illegible, and Defendants have offered no evidence that the signature is that of Paige, the insured. Thus, the Court cannot find that the document is "presented in a form that would be admissible in evidence." This is particularly appropriate because waiver and release are affirmative defenses, *see* Fed. R. Civ. P. 8(c)(1), so Defendants have the burden of establishing them "beyond peradventure," *see Fontenot*, 780 F.2d at 1194. Accordingly, the Court will grant the motion to strike the Service Agreement.

5

### B. Motion for Summary Judgment

Because the Service Agreement is not currently in evidence, the Court will deny the instant motion for summary judgment without prejudice. This is because, as will be explained below, if the Service Agreement had been in proper form, the Court would grant summary judgment in favor of Defendants.

### 1. Law Governing the Interpretation of Contracts

Under Louisiana law, "[c]ontracts have the effect of law for the parties[.]" La. Civ. Code art. 1983. "Interpretation of a contract is the determination of the common intent of the parties." La. Civ. Code art. 2045.

"When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "Under this Article, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under pretext of pursuing its spirit." *Id.*, cmt. (b) (citing *Maloney v. Oak Builders, Inc.*, 256 La. 85, 235 So. 2d 386 (La. 1970)).

A few other principles of interpretation are worth noting. "The words of a contract must be given their generally prevailing meaning." La. Civ. Code art. 2047. "Words of art and technical terms must be given their technical meaning when the contract involves a technical matter." *Id.* "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050.

Additionally, it is well established that "[t]he verb *to include* introduces examples, not an exhaustive list." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 132 (2012). As Justice Scalia and Garner explained:

> "In normal English usage, if a group "consists of" or "compromises" 300 lawyers, it contains precisely that number. If it "includes" 300 lawyers, there may well be

thousands of other members from all walks of life as well. That is, the word *include* does not ordinarily introduce an exhaustive list, while *compromise*—with an exception that we will discuss shortly—ordinarily does. That is the rule both in good English usage [(citations omitted)] and in textualist decision-making. [*See, e.g., Federal Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) (per Murphy, J.) ("the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle"); *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1115 (D.C. Cir. 2009) (explaining that *including* indicates a nonexhaustive list but that "adding 'but not limited to' helps to emphasize the non-exhaustive nature"); *Richardson v. National City Bank of Evansville*, 141 F.3d 1228, 1232 (7th Cir. 1998) (for purposes of interpreting administrative regulations, *include* is a term of illustration, not limitation).]

Often the phrase that appears is *including but not limited to*—or either of two variants, *including without limitation* and *including without limiting the generality of the foregoing*. These cautious phrases are intended to defeat the negative-implication cannon[:] . . . "Even though the word *including* itself means that the list is merely exemplary and not exhaustive, the courts have not invariably so held. So the longer, more explicit variations are necessary in the eyes of many drafters." [*Garner's Dictionary of Legal Usage* 439-40 (3d ed. 2011).] Even so, the commonness of these belt-and-suspenders phrases does not lessen the exemplariness of *include*.

*Id.* at 132–33.

Finally, "[u]nder Louisiana law, the interpretation of an unambiguous contract is an issue of law for the court." *Amoco Prod. Co. v. Tex. Meridian Res. Expl. Inc.*, 180 F.3d 664, 668 (5th Cir. 1999) (citing *Texas E. Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998)). "In the context of contract interpretation, only when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment." *Id.* at 669.

### 2. Analysis

Having carefully considered the matter, the Court believes that the Service Agreement, if in evidence, would entitle Defendants to summary judgment. This provision states:

**Release:** Customer agrees to release and hold [Dish Network] and its affiliates, and its and their subcontractors, harmless from any damage, loss or expense of any

7

> nature whatsoever that results from or relates to the installation of any equipment, including without limitation, drilling holes in walls, floors, ceilings and roofs, and installation of the antenna, coaxial cable, receivers, and a pole and/or roof mount, rail mount and/or wall mount apparatus.

(Doc. 85-8 at 2.) Above Paige's alleged signature, the agreement provides: "I acknowledge receipt of and agree that I have read, understand and agree to be bound by the terms and conditions contained in this Service Agreement (including those set forth on the back of this page)," which includes the Release. (Doc. 85-8 at 1.)

Contrary to State Farm's arguments, the Release is not limited only to "property damage that may occur <u>during</u> and as a result of necessary steps/actions associated with and/or inherent in the installation process." (Doc. 88 at 6.) To the contrary, the release waives liability for Dish Network, "its affiliates, and its and their subcontractors . . . from *any* damage, loss or expense *of any nature whatsoever* that results from *or relates to the installation of any equipment*." (Doc. 85-8 at 2 (emphasis added).) Thus, this broad provision clearly and unambiguously waives liability for property damage that relates to installation, including acts of negligence, for subcontractors like Defendants. There is simply no other reasonable interpretation.

State Farm also argues that there is ambiguity, but this contention fails. Specifically, State Farm points to the paragraph preceding the Release, which states:

> **Authorization for Installation.** Customer represents and warrants that: … (ii) he/she/it has been authorized to contract for services at the property and has the authority to authorize the installation/services contemplated herein (including, without limitation, making alterations to the Property such as drilling holes in walls, floors, ceilings and roofs, and installation of the antenna, coaxial cable, receivers, and a pole and/or roof mount, rail mount and/or wall mount apparatus); or (iii) he/she/it is a tenant at the Property and either his/her/its agreement with the landlord of the Property allows Customer to have equipment installed at the Property as contemplated herein (including, without limitation, making alterations to the Property such as drilling holes in walls, floors, ceilings and roofs; and installation of a pole and/or roof mount, rail mount and/or wall mount apparatus) or Customer

8

has secured all permission from the landlord of the Property necessary for such installation. . . .

State Farm contends:

> This paragraph is the customer representing to the contractor that he/she/it has authority to authorize the contractor to perform the installation/services at the residence, including "drilling holes in walls,…" (same list of items in the "Release" paragraph). It is not the customer representing that he/she/it has authority to release the contractor from any and all consequential damages that may be caused by negligence or poor workmanship. To allow a tenant, for example, to release the contractor from such liability would be absurd. As such, it is clear that the property damage contemplated by the provisions is simply the foreseeable or expected damage that may occur <u>during</u> installation.

(Doc. 88 at 7.)

In short, the Release is not absurd, it does not mean what State Farm advances, and there is no ambiguity. Indeed, the language which State Farm itself highlights specifically requires that the Customer have the authority for the Service Agreement—that is, all authority, including the Release. And nothing in the Authorization paragraph in any way limits or restricts the broad language in the Release detailed above. The language "including without limitation" in the Release is non-exhaustive and meant to provide examples; it is not intended to limit the scope of the Release. *See* SCALIA & GARNER, *supra*. Again, there is no other reasonable interpretation.

Additionally, as Defendants correctly argue, Paige's waiver deprives State Farm of any claims against Defendants. "Under Louisiana law, a subrogated insurer acquires no greater rights than those possessed by its subrogor and is subject to all limitations applicable to the original claim of the subrogor." *Travelers Ins. Co. v. Impastato*, 607 So. 2d 722, 724 (La. Ct. App. 1992) (citing *Liberty Mut. Ins. v. State Farm*, 579 So. 2d 1090, 1093 (La. Ct. App. 1991)). Thus, in *Travelers*, the appellate court affirmed the granting of

summary judgment because, "since [the insured homeowner] contractually waived her subrogation rights against [the negligent contractor], she had no rights to which [her insurer] could be subrogated." *Id.* The Louisiana Fourth Circuit concluded: "Where the owner may not bring an action against the contractor, neither may the insurer in subrogation, since the rights of the insurer are not superior to those of the owner." *Id.* (citations omitted). Similarly, because Paige waived any rights against Dish Network and its subcontractors (like Defendants), she had no rights to which State Farm could be subrogated, and State Farm has no action against Defendants. Indeed, State Farm seems to concede the validity of this, as State Farm has completely failed to respond to Defendants' argument on the point and thus waived any opposition. *See JMCB, LLC v. Bd. of Commerce & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (deGravelles, J.) ("Plaintiff did not respond to the substance of any of SPL's arguments. . . . On this ground alone, the Court could dismiss Plaintiff's Amended Complaint." (numerous internal citations omitted)); *see also Apollo Energy, LLC v. Certain Underwriters at Lloyd's, London*, -- F. Supp. 3d ---, No. 17-1741, 2019 WL 1938799, at *7 (M.D. La. May 1, 2019) (deGravelles, J.) (finding that, because plaintiff failed to respond to defendant's argument on an issue, the Court could conclude that a policy exclusion applied (citing, *inter alia, JMCB*, 336 F. Supp. 3d at 634)).

Finally, Article 2004 does not save State Farm. This article provides: "Any clause is null that, in advance, excludes or limits the liability of one party for causing physical injury to the other party." La. Civ. Code art. 2004. "Under this Article, a clause relieving a party from liability for damage to property caused through slight fault is valid, unless prohibited by special statutes." *Id.*, cmt. (d) (citations omitted). Again, State Farm tacitly

concedes that this Article does not apply to this suit for insurance proceeds for fire damage, as State Farm has not responded to it and thus, again, waived any opposition. *See JMCB*, *supra*.

In sum, the Service Agreement's Release clearly and unambiguously absolves Defendants of liability in this case as a matter of law. Thus, while Defendants' motion for summary judgment will be denied without prejudice, if they refile the motion with the Service Agreement in proper form (i.e., with some evidence that Paige signed the Service Agreement), the Court will grant Defendants' motion.

IV. **Conclusion**

Accordingly,

**IT IS ORDERED** that State Farm's *Motion to Strike* (Doc. 87) is **GRANTED**, and the Service Agreement (Doc. 85-8) is **STRIKEN;** and

**IT IS FURTHER ORDERED** that Defendants' *Motion for Summary Judgment* (Doc. 85) is **DENIED WITHOUT PREJUDICE**. Defendants shall have thirty (30) days to refile their motion and submit proper summary judgment evidence establishing that Tamekia Paige signed the Service Agreement. If they do so, State Farm shall have twenty-one (21) days to oppose the motion and submit their own evidence on this issue. If State Farm fails to rebut this evidence, Defendants' motion will be granted on the grounds that the Release absolves Defendants of any liability. If Defendants are unable to obtain evidence of Paige's signature, they should refile their motion for summary judgment on the sole question of whether Bailey caused the fire, and the Court will take up the matter at that time.

Signed in Baton Rouge, Louisiana, on <u>August 20, 2019</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**